1

1         UNITED STATES DISTRICT COURT

2         SOUTHERN DISTRICT OF CALIFORNIA

3

UNITED STATES OF AMERICA,    )

4                              )
              PLAINTIFF,      )    CASE NO. 13CR0472-JAH

5                              )
VS.                           )    SAN DIEGO, CALIFORNIA

6                              )
DAVID JOSE RICO,              )    MONDAY,

7                              )    MARCH 17, 2014
              DEFENDANT.      )    9:02 A.M.

8  _____)

9

10         REPORTER'S TRANSCRIPT OF PROCEEDINGS

11              SENTENCING HEARING

12       BEFORE THE HONORABLE JOHN A. HOUSTON
              UNITED STATES DISTRICT JUDGE

13

14   APPEARANCES:

15   FOR THE GOVERNMENT:      LAURA E. DUFFY, U.S. ATTORNEY
                             BY:  ALESSANDRA P. SERANO, ESQ.

16                            ASSISTANT U.S. ATTORNEY
                             880 FRONT STREET

17                            SAN DIEGO, CALIFORNIA  92101

18

19   FOR THE DEFENDANT:       JACK BOLTAX
                             ATTORNEY AT LAW

20                            701 B STREET
                             SUITE 1105

21                            SAN DIEGO, CALIFORNIA  92101

22

23                    CAMERON P. KIRCHER
                 CSR NO. 9427, RPR, CRR, RMR

24               333 W. BROADWAY STREET, ROOM 420
                 SAN DIEGO, CALIFORNIA  92101

25                 PHONE:  (619) 239-4588
                 E-MAIL:  CPKIRCHER@GMAIL.COM

COMPUTER-AIDED TRANSCRIPTION

2

1          SAN DIEGO, CALIFORNIA – MONDAY, MARCH 17, 2014

2                          9:02 A.M.

3          THE CLERK:  NO. 2 IS NEXT, 13CR0472, THE UNITED

4     STATES OF AMERICA VERSUS DAVID JOSE RICO.

5          MS. SERANO:  GOOD MORNING, YOUR HONOR.  ALESSANDRA

6     SERANO ON BEHALF OF THE UNITED STATES.

7          THE COURT:  GOOD MORNING, MS. SERANO.

8          MR. BOLTAX:  GOOD MORNING, YOUR HONOR.  JACK BOLTAX

9     ON BEHALF OF DAVID JOSE RICO.

10          THE COURT:  GOOD MORNING, SIR.

11          MR. BOLTAX:  HOW ARE YOU?

12          THE COURT:  I'M WELL.  THANK YOU.

13          MR. BOLTAX:  YOUR HONOR, MR. RICO IS NOW PRESENT,

14     AND I'M READY TO PROCEED.

15          THE COURT:  ALL RIGHT.  GOOD MORNING, SIR.

16          THE DEFENDANT:  GOOD MORNING.

17          THE COURT:  WE'RE HERE ON THE MATTER OF SENTENCING

18     AFTER YOUR JURY TRIAL.  I'VE REVIEWED THE PRE-SENTENCE

19     REPORT, YOUR OBJECTIONS TO THE REPORT, YOUR SENTENCING

20     MEMORANDUM, LETTERS IN SUPPORT OF SENTENCING, YOUR SENTENCING

21     SUMMARY CHART, THE GOVERNMENT'S MEMORANDUM AND THE

22     GOVERNMENT'S CHART.

23          COUNSEL, I'D LIKE TO HEAR FROM YOU.

24          MR. BOLTAX:  YOUR HONOR, I THINK I HAVE IN RATHER

25     DETAIL, WITH THE LENGTHY SENTENCING MEMORANDUM AND THE

1   DOCUMENTS, SET FORTH THE DEFENSE'S POSITION.

2          IS THERE ANY ISSUE THAT THE COURT WANTS ME TO

3   ADDRESS?

4          THE COURT:  I'D LIKE TO HEAR FROM YOU GENERALLY,

5   SIR.

6          MR. BOLTAX:  GENERALLY, YOUR HONOR, IT'S MY POSITION

7   THAT MY CLIENT'S ROLE IN THIS OFFENSE WAS SUBSERVIENT TO THAT

8   OF THE CO-DEFENDANT, MS. KELLY.  AND IN PARTICULAR, I MADE A

9   PROPORTIONALITY ARGUMENT, WHICH MAY BE TO SOME DEGREE

10   DIFFICULT TO UNDERSTAND, BUT I THINK MAYBE I'LL SET IT FORTH

11   IN A LITTLE MORE CLARITY.

12          WHEN --

13          THE COURT:  I TOOK YOUR PROPORTIONALITY ARGUMENT AS

14   A DISPARITY ARGUMENT; IS THAT NOT CORRECT?

15          MR. BOLTAX:  THAT'S CORRECT.  IT'S DISPARITY IN A

16   DISPROPORTIONATE SENTENCE.  AND BASICALLY I UNDERSTAND THAT

17   MS. KELLY GOT SOME BENEFIT FOR HER ROLE IN COOPERATING IN

18   THIS CASE AND TESTIFYING AGAINST MY CLIENT AT TRIAL.

19   HOWEVER, I THINK WE NEED TO KEEP IT IN PERSPECTIVE IN TERMS

20   OF WHAT HAPPENED AND HOW SHE GOT TO THAT SENTENCE THAT THE

21   COURT GAVE HER.

22          I RECEIVED A COPY OF AN EDITED PROBATION REPORT FROM

23   THE COURT IN ORDER TO PREPARE FOR TRIAL.  AND THE

24   RECOMMENDATION FROM THE PROBATION OFFICER FOR MS. KELLY, WHO

25   CLEARLY WAS SUFFERING UNDER VERY HIGH GUIDELINES, WAS A

1    SIGNIFICANT DEPARTURE DOWNWARD TO 60 MONTHS.

2         NOW, AT THAT POINT, SHE HAD NOT COOPERATED, SHE HAD

3    NOT TESTIFIED.  SO THAT 60-MONTH PROPOSAL FROM THE PROBATION

4    DEPARTMENT, IN MY ESTIMATION, WAS EXCESSIVELY GENEROUS,

5    ESPECIALLY IN LIGHT OF THE TESTIMONY THAT CAME OUT AT TRIAL

6    IN REGARDS TO THE ROLE OF MS. KELLY, WHICH THE PROBATION

7    OFFICER WAS NOT AWARE OF.

8         SHE PLAYED A SIGNIFICANT ROLE.  SHE WAS THE ONE --

9    IT WAS HER SISTER-IN-LAW WHO SHE UTILIZED.  SHE'S THE ONE WHO

10   HELPED THE SISTER-IN-LAW RUN AWAY.  SHE'S -- AND THAT

11   OCCURRED IN JANUARY.  SHE PROVIDED HER SAFE HAVEN BY

12   PROVIDING HER A PLACE TO LIVE THROUGH VARIOUS HOTEL ROOMS.

13   SHE WAS THE ONE WHO RECRUITED HER AT THE END OF FEBRUARY TO

14   BEGIN PARTICIPATING IN THIS PROSTITUTION SCHEME.

15        AND IT SHOULD BE CLEAR THAT SHE TESTIFIED THAT --

16   AND MS. J.C., EXCUSE ME, TESTIFIED THAT THERE WAS A

17   SEVERAL-WEEK PERIOD BEFORE MY CLIENT WAS EVEN INVOLVED IN

18   THIS, WHEN J.C. WAS WORKING FOR THE CO-DEFENDANT IN THIS

19   CASE.

20        THE CO-DEFENDANT DID EVERYTHING THAT LARRY THOMAS,

21   THE EXPERT, TESTIFIED TO WAS THE ROLE OF A PIMP.  SHE

22   RECRUITED HER.  SHE PROVIDED THE CLOTHING FOR HER TO MAKE THE

23   BACKPAGE ADS.  SHE TOOK THE PHOTOS FOR THE BACKPAGE ADS.  SHE

24   PRODUCED THE BACKPAGE ADS.  SHE WAS THE ONE WHO RESPONDED TO

25   THE BACKPAGE ADS.  SHE'S THE ONE WHO SET THE PRICE.  SHE IS

1    THE ONE WHO TOOK THE CALLS AND MADE THE APPOINTMENTS.  SHE'S

2    THE ONE WHO TOOK J.C. TO THE OUTCALLS AND PICKED HER UP FROM

3    THE OUTCALLS TO THE IN-CALLS.

4         SHE DID ADDITIONAL THINGS, WHICH SHE, AS OPPOSED TO

5    MY CLIENT, WAS AWARE, IN TERMS OF WHAT MS. SERANO REFERS TO

6    AS THE, QUOTE, UNQUOTE, ISSUES THAT J.C. HAD.  AND THAT IS

7    SHE PROVIDED HER WITH METHAMPHETAMINE FOR THE EXPLICIT

8    PURPOSE OF KEEPING HER UP SO THAT SHE COULD RESPOND TO

9    LATE-NIGHT CALLS FROM POTENTIAL CUSTOMERS.

10        SHE ALSO PROVIDED HER WITH HEROIN.  AND THAT WAS

11   BROUGHT OUT BECAUSE, AS WAS EVIDENCED BY THE TESTIMONY, MY

12   CLIENT WAS AGAINST THE USE OF HEROIN AND HAD NOTHING TO DO

13   WITH IT.

14        SHE ALSO EMOTIONALLY ABUSED HER SO THAT SHE WOULD

15   STAY AWAY AND NOT GO BACK TO HER FAMILY, TELLING HER AT ONE

16   POINT THAT HER DOG HAD DIED, TELLING HER WHAT WOULD HAPPEN IF

17   THE FAMILY FOUND OUT WHAT SHE HAD BEEN DOING IF SHE WENT

18   HOME.  MR. THOMAS TESTIFIED THAT THOSE WERE EXPLICIT THINGS

19   THAT WERE DONE BY PIMPS IN ORDER TO KEEP THEIR PSYCHOLOGICAL

20   HOLD ON THE PROSTITUTES THAT WERE WORKING FOR THEM.

21        SO IT WAS A SITUATION WHERE SHE ALSO PHYSICALLY

22   ABUSED HER.  SHE BASICALLY DID EVERYTHING SHE COULD,

23   ACCORDING TO MR. THOMAS, TO KEEP HER IN THE FOLD.  SO ALL OF

24   THE SIGNIFICANT THINGS THAT WERE DONE IN THIS CASE WERE DONE,

25   IN TERMS OF WHO WAS THE PIMP, BY MS. KELLY.  AND SO, IN MY

1    VIEWPOINT -- I DON'T KNOW EXACTLY WHAT THE COURT DID.  I

2    WASN'T HERE.  THERE WAS A RECOMMENDATION OF 60 MONTHS BY THE

3    PROBATION DEPARTMENT.  THE COURT GAVE HER, I BELIEVE, 51

4    MONTHS.

5          I DON'T KNOW IF THE COURT FOLLOWED THE 60 MONTHS.

6    IF I ASSUME THAT IT DID, THEN SHE GOT A NINE-MONTH BREAK FOR

7    HER COOPERATION.  BUT THE 60 MONTHS BECOMES THE GAUGE,

8    BECAUSE IF MY CLIENT WAS LESS CULPABLE, IN TERMS OF HIS

9    PARTICIPATION IN THIS, THEN HE SHOULD GET A LOWER SENTENCE IF

10   HE WAS ELIGIBLE TO GET BELOW THE TEN-YEAR MINIMUM MAN.

11         UNFORTUNATELY, HE'S NOT, BECAUSE HE WENT TO TRIAL

12   AND HE GOT CONVICTED.  HE GOT CONVICTED OF THE TEN-YEAR MIN

13   MAN.  SO IT IS MY POSITION THAT, RATHER THAN GET THE 168

14   MONTHS, WHICH IS WHAT MS. SERANO IS RECOMMENDING, OR THE 144

15   MONTHS, WHICH IS WHAT THE PROBATION DEPARTMENT IS

16   RECOMMENDING, I BELIEVE THAT TEN YEARS WOULD BE THE

17   APPROPRIATE SENTENCE IN THIS CASE, AT LEAST IN PART DUE TO

18   THAT.

19         IN ADDITION, I'D LIKE TO INDICATE THAT THERE ARE

20   CERTAIN FACTORS THAT ARE POSITIVE FOR MY CLIENT.  HE'S ALWAYS

21   WORKED SINCE HE'S BEEN A YOUNG MAN.  HE HAS A CHILD OF HIS

22   OWN, WHO HE HAS PROVIDED, UP UNTIL HIS ARREST IN THIS CASE,

23   CHILD SUPPORT FOR.  HE HAS AN EXTENDED FAMILY, AND HIS FAMILY

24   IS HERE.  IF THEY WOULD STAND UP AND IDENTIFY THEMSELVES FOR

25   THE COURT.

1    YOU CAN SEE THERE IS A WHOLE ROW OF PEOPLE.  HIS

2  MOTHER IS HERE.  HIS BROTHER IS HERE.  A COUPLE OF AUNTS ARE

3  HERE.  I DON'T KNOW IF THE COURT WANTS ME TO HAVE THE PEOPLE

4  IDENTIFY THEMSELVES OR NOT.

5    THE COURT:  IT'S NOT NECESSARY.

6    GOOD MORNING.

7    MR. BOLTAX:  WHAT THAT MEANS IS ONE OF THE THINGS

8  THE COURT NEEDS TO BE CONCERNED ABOUT IS WHAT ARE HIS CHANCES

9  WHEN HE GETS OUT, OF BEING SUCCESSFUL WHEN HE GETS OUT OF

10  JAIL.  AND HIS MOTHER AND FATHER AND FAMILY HAVE INDICATED

11  THAT THEY WILL PROVIDE THE SUPPORT AND BACKING THAT HE NEEDS

12  IN ORDER TO GET ON HIS FEET, A PLACE TO LIVE AND HELP WITH

13  GETTING WORK IF HE SO NEEDS IT.

14    I DON'T KNOW IF THERE IS ANYTHING ELSE THAT THE

15  COURT WANTS ME TO ADDRESS.  I DID ADDRESS THE ISSUE OF THE

16  COMPUTER.  I THINK THE APPLICATION NOTES INDICATE WHAT THE

17  COMPUTER ENHANCEMENT STANDS FOR.  IN THIS SITUATION, MY

18  CLIENT WASN'T THE ONE WHO UTILIZED THE COMPUTER FOR THE

19  PURPOSE OF MAKING THE BACKPAGE ADS.  HE WASN'T THE ONE WHO

20  LOADED THEM AND HE WASN'T THE ONE WHO TOOK THE MESSAGES FROM

21  THE COMPUTER.

22    IN ADDITION, I MADE A COROLLARY ARGUMENT TO THE

23  CHILD PORNOGRAPHY CASES, BECAUSE THE U.S. SENTENCING

24  COMMISSION HAS RECENTLY COME DOWN AND ADDRESSED THE ISSUE OF

25  THE UTILIZATION OF THE COMPUTER ENHANCEMENT FOR CHILD PORN

1    CASES, AND INDICATED THAT WHEN THE GUIDELINES WERE ENACTED IN

2    DEALING WITH THE CHILD PORN CASES, THAT THE COMPUTER

3    ENHANCEMENT WAS APPROPRIATE, BECAUSE IT WAS AN AGGRAVATING

4    FACTOR BECAUSE IT WASN'T THE TYPICAL WAY BY WHICH THIS

5    TYPE -- THAT TYPE OF CRIME WAS COMMITTED.

6         AND SO IT WENT ON TO INDICATE THAT IN THIS DAY AND

7    AGE, AT LEAST WITH CHILD PORN CASES, 90 PERCENT OF THE CASES

8    OR MORE USE A COMPUTER, AND IT MAY NOT BE AT THIS POINT ANY

9    LONGER AN AGGRAVATING FACTOR BECAUSE IT'S THE TYPICAL WAY IN

10   WHICH THE CRIMES ARE COMMITTED.

11        AND I WOULD SUBMIT TO THE COURT BASED ON THE

12   TESTIMONY OF MR. THOMAS, THE EXPERT HERE, THAT THAT

13   TRANSITION FROM GOING FROM PHONE TO PHONE OR WORD OF MOUTH OR

14   ADVERTISING OR WHATEVER, HAS NOW BECOME ALMOST EXCLUSIVELY

15   UTILIZED THROUGH THE COMPUTER.  SO I QUESTION WHETHER OR NOT,

16   UNDER THE APPLICATION NOTES, THE COMPUTER ENHANCEMENT IS

17   APPLICABLE, AND I ALSO ASK THE COURT TO CONSIDER THAT THIS IS

18   PROBABLY THE TYPICAL WAY WITHIN WHICH THIS CRIME IS

19   COMMITTED.

20        SO IT WOULD BE MY POSITION THAT THE COURT COULD

21   CONSIDER THAT AS A REASON FOR GIVING A VARIANCE DOWNWARD FROM

22   THE GUIDELINE RANGE.

23        THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

24        MS. SERANO.

25        MS. SERANO:  YOUR HONOR, I WOULD LIKE TO ADDRESS A

1    FEW THINGS THAT MR. BOLTAX MENTIONED, AND THEN JUST POINT OUT

2    WHY THE GOVERNMENT IS RECOMMENDING WHAT WE'RE RECOMMENDING.

3          FIRST OF ALL, HE ARGUES THAT THE GAUGE SHOULD BE THE

4    60-MONTH RECOMMENDATION THAT THE U.S. PROBATION OFFICE

5    INITIALLY RECOMMENDED FOR MS. KELLY.  I THINK THAT'S THE

6    WRONG PLACE TO START.  HER PRE-SENTENCE REPORT WAS CONDUCTED

7    WELL BEFORE THE TRIAL.  YOUR HONOR ACTUALLY SAT THROUGH THE

8    TRIAL AND GOT TO HEAR EVERYTHING.  I THINK THAT IS THE WRONG

9    PLACE TO START.

10         IT'S CERTAINLY SOMETHING THAT YOUR HONOR CAN

11   CONSIDER, AND YOUR HONOR IS WELL AWARE THAT WE MADE A

12   SIGNIFICANT 5K RECOMMENDATION TO BRING HER -- BRING THE

13   CO-DEFENDANT DOWN TO 51 MONTHS.  THAT'S WHAT WE WERE ASKING

14   FOR AND THAT'S WHAT YOUR HONOR IMPOSED BECAUSE OF HER

15   COOPERATION IN TESTIFYING AGAINST THIS DEFENDANT AT TRIAL.

16   IT HAD NOTHING TO DO WITH WHAT PROBATION'S ANALYSIS WAS AS TO

17   HOW THEY CAME UP WITH THE 60-MONTH RECOMMENDATION IN THE

18   P.S.R.

19         COUNSEL ALSO SEEMS TO GET CAUGHT UP IN THE

20   TERMINOLOGY OF A PIMP.  THE STATUTE CRIMINALIZES FOLKS WHO

21   OBTAIN, HARBOR, TRANSPORT, ENTICE, RECRUIT.  THERE ARE SEVEN

22   VERBS THAT IF YOU DO ANY ONE OF THOSE SEVEN VERBS IN RELATION

23   WITH A MINOR IN TERMS OF SEX TRAFFICKING, YOU CAN BE CHARGED

24   WITH THE STATUTE; SO YOU DON'T NECESSARILY NEED TO BE A PIMP.

25   THAT IS THE COLLOQUIAL TERM THAT WE USE FOR THE TRAFFICKERS,

1  BUT IF YOU WERE AN INDIVIDUAL WHO JUST DROVE THE MINOR FROM

2  POINT A TO POINT B, YOU CAN BE CHARGED UNDERNEATH THIS

3  STATUTE.

4      SO WHILE I DON'T -- I'M NOT TRYING TO MITIGATE WHAT

5  THE CO-DEFENDANT'S ROLE WAS, I BELIEVE THAT THEY WERE EQUALLY

6  CULPABLE.  MR. BOLTAX GOES INTO ALL OF THE THINGS THAT

7  MS. KELLY DID WITH REGARD TO THE MINOR IN THIS CASE, BUT

8  THERE ARE TWO VERY IMPORTANT THINGS THAT THIS DEFENDANT DID

9  THAT CAUSED THIS CRIME TO HAPPEN, TWO THINGS THAT ONLY HE

10  COULD HAVE DONE.

11      NO. 1, HE'S THE ONE WITH THE CREDIT CARD.  I BELIEVE

12  IT WAS MS. KELLY THAT TESTIFIED THAT SHE DIDN'T HAVE A CREDIT

13  CARD.  SHE DIDN'T HAVE THE ABILITY TO PAY FOR THE ONLINE

14  PROSTITUTION ADS.  SHE ALSO DIDN'T HAVE A PHOTO I.D. OR

15  CREDIT CARD TO PAY FOR THE HOTEL ROOMS.  SO MR. RICO FILLED

16  THAT VOID.  MR. RICO WAS THE ONE THAT PROVIDED THOSE TWO

17  NECESSARY COMPONENTS FOR THIS CRIME TO WORK.

18      SO WHILE BOTH MS. KELLY AND MR. RICO BOTH WORKED

19  TOGETHER IN TANDEM TO PROSTITUTE OUT THE MINOR, I DON'T THINK

20  THAT MR. RICO'S ROLE IS ANY LESS THAN MS. KELLY BECAUSE HE

21  FILLED A VOID THAT MS. KELLY COULD NOT DO.

22      AND WE ALSO HAVE TO REMEMBER -- NOW, WHILE THIS

23  DIDN'T COME OUT AT TRIAL, YOUR HONOR HEARD TESTIMONY ABOUT

24  THIS -- WHILE MS. KELLY WAS EMOTIONALLY ABUSIVE AND COERCIVE

25  TOWARDS THE MINOR, MR. RICO HAD A DIFFERENT TYPE OF

1    RELATIONSHIP WITH THE MINOR.  IF YOUR HONOR RECALLS, YOUR

2    HONOR EXCLUDED IT AT TRIAL -- RIGHTFULLY SO -- THE

3    RELATIONSHIP BETWEEN MR. RICO AND THE MINOR, THAT THEY HAD A

4    BOYFRIEND/GIRLFRIEND TYPE OF RELATIONSHIP.

5         AND IF YOU RECALL THE TESTIMONY FROM LARRY THOMAS,

6    THE TERM THAT IS USED FOR THAT TYPE OF RELATIONSHIP IS A

7    FINESSE PIMP OR SOMEONE -- A BOYFRIEND/GIRLFRIEND PIMP, WHERE

8    YOU GET THE GIRL, THE MAN GETS THE GIRL, YOU KNOW, I LOVE

9    YOU, I WANT TO BE WITH YOU, OR TRIES TO WOO THEM, COURT THEM

10   AS A NORMAL RELATIONSHIP, AND THEN PUTS THEM OUT FOR

11   PROSTITUTION.

12        AND I SUBMIT THAT THAT IS WHAT MR. RICO'S PART WAS.

13   SO WHILE MS. KELLY WAS MORE OF THE, SAY, TRADITIONAL,

14   COERCIVE, YOU KNOW, YOUR DOG DIED, OR ALL THE MANIPULATIVE

15   TYPES OF THINGS, MR. RICO PLAYED A DIFFERENT ROLE IN GETTING

16   THE MINOR TO WORK AS A PROSTITUTE.  SO THOSE ARE THE THINGS

17   THAT I WANTED TO ADDRESS WITH MR. -- WITH COUNSEL'S COMMENTS.

18        THE REASON WHY WE'RE ASKING FOR 168 MONTHS IS,

19   NO. 1, THAT'S THE MID-RANGE OF THE GUIDELINES.  HE DOESN'T

20   HAVE ANY CRIMINAL HISTORY.

21        WITH REGARD TO THE COMPUTER ENHANCEMENT, I

22   UNDERSTAND WHERE COUNSEL IS COMING FROM, THAT, YOU KNOW,

23   WELL, IT'S SOMETHING THAT APPLIES IN EVERY CASE.  NOT SO.

24   UNLIKE THE CHILD PORNOGRAPHY CASES, WHERE IT IS PROBABLY

25   APPLIED IN ABOUT 95 PERCENT OF THE CASES, IN THE PROSTITUTION

1   CASES, ONE CAN COMMIT THIS CRIME WITHOUT HAVING TO USE A

2   COMPUTER.  YOU CAN COMMIT THIS CRIME BY USING A PHONE, USING

3   A HOTEL.  YOU DON'T NECESSARILY NEED TO POST IT ONLINE.

4        IF YOUR HONOR RECALLS THE TESTIMONY FROM LARRY

5   THOMAS IS THAT THAT WAS THE FIRST TIME HE HAD USED THE

6   INTERNET.  NORMALLY HE WOULD HAVE HIS GIRLS WORKING FOR HIM

7   JUST WALKING ON THE STREET.  SO IT'S NOT SOMETHING THAT IS

8   USED EVERY DAY AND IT SHOULD APPLY.  PROBATION RIGHTFULLY

9   RECOMMENDED IT.  WE'RE ALSO RECOMMENDING IT.  IT MAKES IT

10  MORE AGGRAVATING BECAUSE NOW YOU HAVE THIS MINOR'S PICTURE

11  OUT THERE ONLINE FOREVER, AND IT IS ALSO MADE AVAILABLE TO A

12  LARGER NUMBER OF PEOPLE, WHERE MORE POTENTIAL JOHNS OR

13  CUSTOMERS CAN FIND THE MINOR TO ENGAGE IN THIS.

14       SO I THINK THE GUIDELINES ARE CORRECTLY CALCULATED.

15  WE'RE RECOMMENDING THE MID-RANGE OF THAT.  I ALSO THINK THAT

16  ONE OF THE AGGRAVATING FACTORS THAT MR. RICO PLAYED WAS THAT,

17  IF YOUR HONOR RECALLS THE TESTIMONY, MS. KELLY AS WELL AS I

18  BELIEVE THE MINOR, WHILE JANE, THE MINOR GOT THE DRUGS

19  FROM -- SOME OF THE DRUGS FROM THE CO-DEFENDANT, THE

20  CO-DEFENDANT GOT THE DRUGS FROM MR. RICO.

21       MR. RICO USED TO WORK AT STINGAREE, WHICH IS A

22  NIGHTCLUB DOWNTOWN.  I THINK THERE WAS TESTIMONY OR AT LEAST

23  SOME INFERENCE THAT THAT'S WHERE HE WOULD OBTAIN HIS DRUGS.

24  HE WAS SELLING DRUGS.  HE WOULD PROVIDE THEM TO THE

25  CO-DEFENDANT.  THE CO-DEFENDANT WOULD SUPPLY THEM TO THE

13

1    MINOR.  ANY WAY YOU SLICE IT, IT'S A HORRIBLE THING TO GET A

2    MINOR HOOKED ON DRUGS FOR THE PURPOSE FOR HER TO WORK AS A

3    PROSTITUTE.

4         SO WHETHER HE GAVE THEM TO THE MINOR DIRECTLY OR

5    WHETHER THEY PASSED THROUGH AND HE KNEW THAT THIS IS WHERE

6    THE DRUGS WERE GOING, AND THEN THE MONEY WOULD FLOW BACK TO

7    HIM FROM THE PROSTITUTION, HE IS KNEE-DEEP IN THIS AND HE

8    SHOULD BE PENALIZED AS SUCH.

9         MOREOVER, HAD MS. KELLY -- IF YOU WANT TO TALK ABOUT

10   SENTENCING DISPARITIES.  HAD MS. KELLY NOT COOPERATED AND NOT

11   RECEIVED THE BENEFIT OF A MOTION ON BEHALF OF THE GOVERNMENT,

12   SHE WOULD BE LOOKING AT A SIMILAR AMOUNT OF TIME BECAUSE SHE

13   HAD SOME CRIMINAL HISTORY THAT MR. RICO WOULDN'T HAVE.  SO WE

14   CAN'T COMPARE WHAT MS. KELLY GOT TO WHAT MR. RICO IS GOING TO

15   GET BECAUSE MR. RICO ELECTED TO GO TO TRIAL, AS IS HIS RIGHT,

16   AND HE ELECTED -- HE DIDN'T COOPERATE.  SO WE'RE TALKING

17   ABOUT APPLES AND ORANGES.

18        SO WE CAN'T LOOK AT THEM -- WE CAN CERTAINLY LOOK AT

19   THEIR CONDUCT, BUT WE CAN'T LOOK AT THE SENTENCE, WELL, IF

20   THE CO-DEFENDANT GOT 51 MONTHS, THEN MY GUY SHOULD GET THE

21   LEAST AMOUNT.  NO.  HE DOESN'T GET THE THIRD POINT FOR

22   ACCEPTANCE.  HE DOESN'T GET ANY 5K RECOMMENDATION OR ANYTHING

23   LIKE THAT.

24        SO WE BELIEVE THAT 168 MONTHS IS AN APPROPRIATE

25   SENTENCE, FOLLOWED BY TEN YEARS OF SUPERVISED RELEASE.

1          MR. BOLTAX:  MAY I BRIEFLY RESPOND?

2          THE COURT:  YES, SIR.

3          MR. BOLTAX:  YOUR HONOR, FIRST OF ALL, I'M NOT

4    CAUGHT UP ON THE ISSUE OF WHETHER MY CLIENT IS A PIMP.  THAT

5    LANGUAGE IS STATED CLEARLY IN COUNSEL'S SENTENCING

6    MEMORANDUM.  SHE STATES ON PAGE 4, LINE 23, DEFENDANT IS A

7    PIMP.

8          IN TERMS OF CLAIMING THAT MY CLIENT GOT J.C. HOOKED

9    ON DRUGS, OR THAT MS. KELLY DID, LET ME JUST INDICATE THAT I

10   HAVE SIGNIFICANT INFORMATION -- AND I CAN SHOW IT TO THE

11   COURT, BUT I PREFER TO DO IT AT SIDEBAR -- THAT J.C. HAD

12   SIGNIFICANT SUBSTANCE ABUSE ISSUES FOR A SIGNIFICANT PERIOD

13   OF TIME PRIOR TO THIS OFFENSE BEING COMMITTED.

14         I BELIEVE THAT IN MAY OF 2011, SHE HAD SUBSTANCE

15   ABUSE ISSUES AND WAS ATTENDING TEEN MCALLISTER INSTITUTE,

16   WHICH IS THE MCALLISTER INSTITUTE, I THINK THE COURT PROBABLY

17   KNOWS, IS A DRUG REHAB PROGRAM.  THEY HAVE A SPECIAL PROGRAM

18   FOR TEENAGERS.  AND SHE HAD RELAPSED IN NOVEMBER OF 2011, A

19   COUPLE OF MONTHS BEFORE THIS.  SO TO ACCUSE MY CLIENT OF

20   GETTING HER HOOKED IS, ONE -- IS NOT ACCURATE AND IT WOULD

21   MISCHARACTERIZE THE SITUATION THAT OCCURRED HERE.

22         COUNSEL ALSO SAYS THAT THIS CRIME CAN BE COMMITTED

23   WITHOUT A COMPUTER, AS OPPOSED TO CHILD PORNOGRAPHY OFFENSES.

24   CHILD PORNOGRAPHY OFFENSES CAN AND USED TO BE COMMITTED

25   WITHOUT A COMPUTER.  SO I THINK IT'S SIGNIFICANT IN TERMS OF

1   THE ANALYSIS AS TO WHETHER OR NOT THE COMPUTER ENHANCEMENT

2   APPLIES.

3          I ALSO INDICATE -- WOULD LIKE TO INDICATE THAT THERE

4   WAS NO EVIDENCE THAT MY CLIENT HAD A BOYFRIEND/GIRLFRIEND

5   RELATIONSHIP THAT CAME INTO EVIDENCE DURING TRIAL.  THERE WAS

6   NO EVIDENCE IT CAME INTO EVIDENCE DURING TRIAL.

7          THE COURT:  I EXCLUDED IT, COUNSEL.

8          MR. BOLTAX:  I UNDERSTAND IT WAS EXCLUDED.  BUT THE

9   COURT HAD NO WAY OF KNOWING UNTIL THE WITNESSES TESTIFIED AS

10  TO WHETHER IT HAD ANY CREDIBILITY OR NOT, BECAUSE THEY

11  WEREN'T CROSS-EXAMINED ON THE MATTER.  SO I DON'T THINK THAT

12  THE COURT SHOULD CONSIDER IT, AND I THINK IT WOULD BE

13  SOMETHING THAT WOULD BE, IN MY VIEWPOINT, A VIOLATION OF

14  BOOKER AND WOULD BE ALLOWING THE COURT TO CONSIDER MATTERS

15  THAT WERE NOT INTRODUCED INTO EVIDENCE AT TRIAL.

16         THE COURT:  THE COURT CONSIDERS THAT RELEVANT

17  CONDUCT.

18         MR. BOLTAX:  I UNDERSTAND THAT.  I WOULD INDICATE TO

19  THE COURT THAT I DON'T BELIEVE THE COURT SHOULD, BECAUSE IT

20  HASN'T STOOD THE TEST OF TIME IN TERMS OF CROSS-EXAMINATION

21  OR THE WITNESSES ACTUALLY TESTIFYING TO IT.

22         AND I SHOULD INDICATE TO THE COURT THAT THAT WAS

23  SOMETHING THAT WE WERE NOTIFIED ABOUT AT THE VERY LAST

24  MINUTE, JUST SHORTLY BEFORE TRIAL OCCURRED.  SO WHETHER -- WE

25  DIDN'T EVEN HAVE AN OPPORTUNITY TO INVESTIGATE THAT

1    PARTICULAR ACCUSATION.

2            SO WITH THAT BEING SAID, I THINK I'VE PRETTY MUCH

3    SET FORTH MY POSITION.  MY CLIENT INDICATES THAT HE WANTS TO

4    ADDRESS THE COURT IF THE COURT IS WILLING TO HEAR HIM.

5            THE COURT:  ALL RIGHT.  THANK YOU.

6            MR. BASS.

7            MR. BASS:  YOUR HONOR, FOR REASONS OUTLINED IN THE

8    PRE-SENTENCE REPORT, WE WOULD RECOMMEND 144 MONTHS.

9            THE COURT:  ALL RIGHT.  THANK YOU.

10           MR. RICO, WHAT DO YOU HAVE TO SAY, SIR?

11           THE DEFENDANT:  YOUR HONOR, I'VE BEEN DOWN FOR A

12   LITTLE OVER MORE THAN A YEAR NOW, AND I KEEP TRYING TO BETTER

13   AND BETTER MYSELF AS MUCH AS POSSIBLE.  AND I HAVE BEEN

14   WORKING FOR OVER A YEAR NOW, TOO.  MONDAY THROUGH THURSDAY I

15   SERVE EVERYBODY TRAYS.  I GET UP AT 5:30 AND WORK UNTIL 2:30.

16   I CLEAN THE TOILETS.  I SWEEP AND MOP ALL THE AREA.  I'VE

17   ALWAYS HELD A JOB ON THE OUTSIDE.

18           I JUST WANT TO GET BACK TO MY FAMILY AS SOON AS

19   POSSIBLE AND -- I'M JUST REAL NERVOUS RIGHT NOW.  I CAN'T

20   EVEN THINK STRAIGHT.  I'VE NEVER BEEN ASSOCIATED WITH GANG

21   MEMBERS.  I DON'T ASSOCIATE WITH GANG MEMBERS.  I DON'T PLAN

22   ON EVER VIOLATING WHEN I GET OUT.  I PLAN ON DEDICATING MY

23   LIFE TO BEING A JEHOVAH'S WITNESS, AND I JUST ASK THAT YOU

24   PLEASE BE PASSIONATE AND HAVE SOME MERCY ON MY SENTENCING.

25   AND THAT'S ABOUT IT.

1          THE COURT:  ALL RIGHT.  THANK YOU.

2          THE DEFENDANT:  THANK YOU FOR LETTING ME SPEAK.

3          THE COURT:  ALL RIGHT.  SIR, YOUR SENTENCE SHALL BE

4    BASED UPON THE FOLLOWING.  I'LL LOOK TO THE GUIDELINES FIRST,

5    BUT BEFORE I GET TO THE GUIDELINES, WITH RESPECT TO YOUR

6    OBJECTIONS, YOUR OBJECTIONS ARE OVERRULED, INCLUDING THE

7    OBJECTION WITH RESPECT TO THE USE OF A COMPUTER.  IT'S

8    OVERRULED.

9          UNDER THE GUIDELINES, YOUR BASE OFFENSE LEVEL IS 30.

10   YOUR BASE OFFENSE LEVEL IS INCREASED BY TWO LEVELS DUE TO THE

11   USE OF A COMPUTER, AND IT'S INCREASED BY ANOTHER TWO LEVELS

12   DUE TO A COMMERCIAL SEX ACT, FOR AN ADJUSTED OFFENSE LEVEL OF

13   34.  YOUR CRIMINAL HISTORY SCORE IS ZERO, YOUR CRIMINAL

14   HISTORY CATEGORY IS ONE, AND UNDER THE GUIDELINES, YOUR

15   SENTENCE SHOULD RANGE BETWEEN 151 AND 188 MONTHS IN CUSTODY.

16         I LOOK TO THE FACTORS PROVIDED BY LAW WHICH PERMIT

17   ME TO DETERMINE -- WELL, FIRST OF ALL, YOU ASK FOR A DOWNWARD

18   DEPARTURE BASED UPON A COMBINATION OF FACTORS.  YOU POINT TO

19   YOUR AGE, YOUR FAMILY TIES AND RESPONSIBILITIES AND A

20   DEPARTURE BASED UPON A PROPORTIONATE SENTENCE WITH YOUR

21   CO-DEFENDANT.  THE COURT FINDS THAT YOUR REQUEST FOR

22   COMBINATION OF FACTORS SHOULD BE DENIED.  THE COURT FINDS

23   THAT THOSE FACTORS IN THIS INSTANCE DO NOT CREATE AN

24   EXTRAORDINARY CASE.

25         I LOOK TO THE FACTORS PROVIDED BY LAW WHICH PERMIT

18

1    ME TO DETERMINE AN APPROPRIATE SENTENCE FOR YOU.  I'M MINDFUL

2    OF YOUR PERSONAL HISTORY AND CHARACTERISTICS, THE NEED TO

3    DETER YOU AND OTHERS FROM ACTIVITY OF THIS SORT.  THE COURT

4    UNDERSTANDS THE NEED TO AVOID AN UNWARRANTED SENTENCE

5    DISPARITY.  I TAKE INTO ACCOUNT YOUR LACK OF PRIOR CRIMINAL

6    HISTORY.  I TAKE INTO ACCOUNT THE NATURE AND EXTENT OF YOUR

7    INVOLVEMENT IN THIS OFFENSE.

8            AND HAVING CONSIDERED ALL THESE FACTORS, THE COURT

9    SENTENCES YOU TO 130 MONTHS IN CUSTODY.  THERE SHALL BE NO

10   FINE.  YOU SHALL PAY THE $100 SPECIAL ASSESSMENT.

11           AND YOU ARE PLACED ON SUPERVISED RELEASE FOR A

12   PERIOD OF FIVE YEARS.  I UNDERSTAND THAT THE UNITED STATES

13   REQUESTS A LONGER PERIOD OF SUPERVISED RELEASE, BUT THE COURT

14   AGREES WITH THE PROBATION OFFICER THAT A FIVE-YEAR TERM

15   SHOULD BE SUFFICIENT.

16           AND YOUR SUPERVISED RELEASE IS BASED UPON THE

17   GENERAL AND MANDATORY CONDITIONS IMPOSED BY THE PROBATION

18   DEPARTMENT, INCLUDING THE SPECIAL CONDITIONS.  I CAN READ

19   THEM -- HAVE YOU REVIEWED THE SPECIAL CONDITIONS ON PAGES 19

20   AND 20 OF THE PRE-SENTENCE REPORT, SIR?

21           MR. BOLTAX:  YES, I HAVE.  I'VE REVIEWED THEM WITH

22   THE CLIENT, YOUR HONOR.

23           MS. SERANO:  AND, YOUR HONOR, I DID ASK FOR TWO --

24   ONE SUBSTITUTED ONE AND ONE ADDITIONAL ONE ON PAGE 5 OF THE

25   GOVERNMENT'S RECOMMENDED MEMORANDUM.

19

1          THE COURT:  ALL RIGHT.  THANK YOU.

2          MR. BOLTAX:  IS THE COURT GOING TO IMPOSE EITHER OF

3     THOSE CONDITIONS?

4          THE COURT:  I'D LIKE TO HEAR FROM YOU ON THE FIRST

5     ONE.  THE SECOND IS ONE I WILL.

6          WHAT'S YOUR THOUGHT ON THE FIRST ONE?

7          MR. BOLTAX:  THE FIRST ONE --

8          THE COURT:  FOR THE RECORD, THE FIRST CONDITION,

9     SUBSTITUTED CONDITION PROPOSED BY THE UNITED STATES -- WELL,

10    THE UNITED STATES PROPOSES TO SUBSTITUTE SPECIAL CONDITION

11    NO. 1, WHICH DEALS WITH SEARCH, SUBMISSION TO A SEARCH, WITH

12    A FOURTH AMENDMENT WAIVER SEARCH.

13         MR. BOLTAX:  THERE ARE TWO REASONS.  I DON'T THINK

14    MY CLIENT POSSESSED ANY OF THE INSTRUMENTALITY OF THE CRIME

15    HERE, IN TERMS OF THE COMPUTER, ET CETERA; SO I DON'T SEE THE

16    PURPOSE OF SEARCHING HIM OR HIS COMPUTER.  THE SECOND THING,

17    I THINK THE CONDITION IS TOO BROAD, BECAUSE IT'S AN

18    UNCONDITIONAL SEARCH WITHOUT ANY CAUSE WHATSOEVER.

19         SO IF THE COURT IS GOING TO IMPOSE IT, I THINK THERE

20    NEEDS TO BE SOME TYPE OF REASONABLE CAUSE PROVISION IN THERE,

21    AS OPPOSED TO AN UNEQUIVOCAL ABILITY TO SEARCH HIM WHENEVER

22    THEY WANT TO WITHOUT ANY REASONABLE SUSPICION OR SUSPICION

23    WHATSOEVER.

24         THE COURT:  MS. SERANO.

25         MS. SERANO:  MY CONCERN IS THIS, IS THAT THERE WAS

1    TESTIMONY AT TRIAL, I BELIEVE IT WAS THROUGH EITHER HIS

2    SISTER OR SOMEWHERE ELSE, THAT HE HAD AN APARTMENT, BUT YET

3    HE WAS STAYING IN ALL THESE DIFFERENT MOTEL ROOMS FOR WEEKS

4    ON END WITH THE CO-DEFENDANT.

5            I WANT TO GIVE THE PROBATION OFFICER AS MANY TOOLS

6    AS POSSIBLE TO MAKE SURE THAT HE IS DOING WHAT HE'S SUPPOSED

7    TO BE DOING.  THIS IS JUST NOT A COMPUTER CONDITION.  THIS IS

8    A CONDITION WHERE REGARDLESS OF WHERE HE RESIDES, IF HE'S

9    SLEEPING ON A FRIEND'S SOFA OR RENTS A HOTEL ROOM, WHAT HAVE

10   YOU, GIVEN HIS INVOLVEMENT IN THIS CASE, THE ALLEGATIONS OF

11   THE PROVIDING OF THE DRUGS AND WORKING WITH SOMEBODY, WORKING

12   TOGETHER TO PROSTITUTE OUT SOMEBODY, I THINK IT WARRANTS A

13   MORE STRINGENT SEARCH CONDITION.

14           I WILL NOTE THAT IF THIS WERE IN STATE COURT, THIS

15   WOULD BE SOMETHING THAT WOULD BE NORMALLY BE IMPOSED.  AGAIN,

16   BECAUSE THE CONDITIONS ARE SO STRINGENT, I WANT TO MAKE SURE

17   THAT THE PROBATION OFFICER HAS AS MANY TOOLS AS POSSIBLE TO

18   MAKE SURE OF HIS COMPLIANCE.

19           MR. BOLTAX:  MAY I BRIEFLY RESPOND?

20           THE COURT:  NO.  THANK YOU.  THANK YOU, MA'AM.

21           COUNSEL, COULD YOU SHARE THE CONDITIONS, THE

22   PROBATION OFFICER'S CONDITIONS WITH YOUR CLIENT AS I GO

23   THROUGH THESE.

24           MR. BOLTAX:  SURE.

25           THE COURT:  ALL RIGHT.

1          MR. BOLTAX:  ONE MOMENT, YOUR HONOR.  I NEED TO PULL

2     IT OUT.

3          THE COURT:  SURE.

4          ALL RIGHT.  MR. RICO, THE PROBATION OFFICER

5     RECOMMENDS EIGHT PARTICULAR SPECIAL CONDITIONS.

6          DID YOU REVIEW THESE WITH YOUR LAWYER?

7          THE DEFENDANT:  YES.

8          THE COURT:  ALL RIGHT.  I CAN READ THEM TO YOU, OR I

9     CAN ACCEPT YOUR STATEMENT THAT YOU UNDERSTAND WHAT THESE ARE

10    AND I NEED NOT PUT THEM ON THE RECORD.

11         WHAT'S YOUR THINKING?

12         MR. BOLTAX:  ARE YOU GOING TO PROVIDE MY CLIENT WITH

13    A COPY OF THOSE THIS MORNING?

14         THE COURT:  YES, YOU'LL HAVE A COPY OF THEM.

15         THE DEFENDANT:  NO NEED TO DO IT ON THE RECORD.

16         THE COURT:  ALL RIGHT.  THANK YOU.

17         THE COURT WILL IMPOSE RECOMMENDED CONDITIONS 1

18    THROUGH 8 UNDER PARAGRAPH 102.  THE COURT WILL NOT IMPOSE THE

19    FOURTH AMENDMENT WAIVER CONDITION PROPOSED BY THE UNITED

20    STATES.  THE COURT IS OF THE MIND THAT THE STANDARD SEARCH

21    CONDITION IS APPROPRIATE AND THERE IS NO NEED TO HAVE THE

22    MORE STRINGENT FOURTH AMENDMENT WAIVER.

23         THE COURT WILL IMPOSE AN ADDITIONAL CONDITION TO THE

24    EIGHT THAT ARE INCLUDED, TWO ADDITIONAL CONDITIONS.

25    MR. RICO, IN ADDITION TO THE EIGHT CONDITIONS CONTAINED IN

1   PARAGRAPH 102, HERE ARE TWO ADDITIONAL CONDITIONS.  NO. 1,

2   YOU ARE NOT TO ASSOCIATE WITH KNOWN PROSTITUTES OR PIMPS,

3   AND/OR LOITER IN AREAS KNOWN TO BE FREQUENTED BY THOSE

4   ENGAGED IN PROSTITUTION; THAT'S NO. 9.

5           AND NO. 10, YOU ARE TO PROVIDE THE PROBATION OFFICER

6   WITH AN ADDRESS OR ADDRESSES WHERE YOU RESIDE OR WHERE YOU

7   WILL BE STAYING DURING THE PERIOD OF SUPERVISED RELEASE.

8           DO YOU UNDERSTAND?

9           THE DEFENDANT:  YES, SIR.

10          THE COURT:  IF YOU ARE FOUND TO BE LIVING SOMEWHERE

11  ELSE, THEN YOU'RE IN VIOLATION OF YOUR CONDITIONS.

12          DO YOU UNDERSTAND THAT?

13          THE DEFENDANT:  YES, SIR.

14          THE COURT:  THE COURT IS OF THE MIND THAT THESE

15  CONDITIONS ARE SUFFICIENT, BUT NOT GREATER THAN NECESSARY

16  UNDER THE CIRCUMSTANCES.

17          MR. BOLTAX:  I HAVE TWO OTHER REQUESTS, YOUR HONOR.

18          MY CLIENT -- AND IT'S CLEAR FROM THE TESTIMONY --

19  HAS A SUBSTANCE ABUSE PROBLEM.  I'D ASK THE COURT IF IT WOULD

20  RECOMMEND THE RDAP PROGRAM SO HE CAN GET SOME TREATMENT.

21          THE COURT:  THE COURT WILL RECOMMEND THE 500-HOUR

22  DRUG TREATMENT PROGRAM.  BUT THAT'S ONLY A RECOMMENDATION AND

23  IT'S UP TO THE BUREAU OF PRISONS TO PLACE YOU.

24          MR. BOLTAX:  THE OTHER THING, YOUR HONOR, IS HIS

25  FAMILY LIVES NEAR SOUTHERN CALIFORNIA.  WOULD THE COURT

1   RECOMMEND THE WESTERN REGION FOR HIM TO BE HOUSED DURING THE

2   PERIOD OF HIS INCARCERATION?

3           THE COURT:  MS. SERANO, IS THERE ANY SPECIAL

4   COUNSELING IN THE PRISON SETTING FOR DEFENDANTS CONVICTED OF

5   THIS TYPE OF AN OFFENSE?

6           MS. SERANO:  THERE ARE PROGRAMS FOR FOLKS THAT

7   COMMIT CHILD PORNOGRAPHY OFFENSES, BUT TO MY KNOWLEDGE, THERE

8   IS NO SPECIALIZED PROGRAM FOR FOLKS WHO COMMIT TRAFFICKING.

9           THE COURT:  ALL RIGHT.  THANK YOU.

10          MS. SERANO:  IT'S THE BUREAU OF PRISONS' SEX

11  OFFENDER MANAGEMENT PROGRAM, BUT THAT'S MORE GEARED TOWARDS

12  INDIVIDUALS CONVICTED OF CHILD PORNOGRAPHY OFFENSES.

13          THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

14          THE COURT WILL ALSO RECOMMEND THAT YOU BE HOUSED IN

15  THE WESTERN REGION SO THAT FAMILY MEMBERS MIGHT MORE EASILY

16  VISIT.  THAT'S ONLY A RECOMMENDATION AS WELL.  IT'S UP TO THE

17  THE BUREAU OF PRISONS TO PLACE YOU.

18          DO YOU UNDERSTAND, SIR?

19          THE DEFENDANT:  YES.  THANK YOU.

20          MS. SERANO:  AND, YOUR HONOR, ONE LAST THING.  HE

21  WAS CONVICTED OF BOTH COUNTS.  I ASSUME THE GUIDELINES AND

22  SENTENCE WILL BE THE SAME, TO RUN CONCURRENTLY?

23          THE COURT:  THAT'S YOUR SENTENCE AS TO COUNT 1, SIR.

24          YOUR SENTENCE AS TO COUNT 2 IS 130 MONTHS IN

25  CUSTODY.  THERE SHALL BE NO FINE.  YOU SHALL PAY THE $100

1    SPECIAL ASSESSMENT.  AND YOU ARE PLACED ON SUPERVISED RELEASE

2    FOR A PERIOD OF FIVE YEARS UNDER THE SAME TERMS AND

3    CONDITIONS IMPOSED IN COUNT 1.

4         DO YOU UNDERSTAND?

5         THE DEFENDANT:  YES, SIR.

6         THE COURT:  THE CUSTODIAL SENTENCE IN COUNT 2 SHALL

7    RUN CONCURRENTLY WITH THE CUSTODIAL SENTENCE IN COUNT 1 FOR A

8    TOTAL OF 130 MONTHS IN CUSTODY.  YOU SHALL PAY BOTH SPECIAL

9    ASSESSMENTS FOR A TOTAL OF $200.  AND THE TERMS OF SUPERVISED

10   RELEASE SHALL RUN CONCURRENTLY FOR A TOTAL PERIOD OF FIVE

11   YEARS OF SUPERVISED RELEASE.

12        DO YOU UNDERSTAND YOU HAVE THE RIGHT TO APPEAL YOUR

13   CONVICTION AND SENTENCE?

14        THE DEFENDANT:  YES, SIR.

15        THE COURT:  ALL RIGHT.  ONE SECOND.

16        MR. BOLTAX, ANY OBJECTION TO -- BECAUSE I'VE ADDED

17   CONDITIONS HERE, OTHER THAN THOSE PROPOSED BY THE PROBATION

18   DEPARTMENT, ANY OBJECTION TO RECEIVING THE CONDITIONS OF

19   SUPERVISED RELEASE LATER TODAY OR FIRST THING TOMORROW?

20        MR. BOLTAX:  THAT'S NOT A PROBLEM, YOUR HONOR.  WHAT

21   I'LL DO IS MAKE A COPY OF THEM AND BRING THEM TO THE CLIENT.

22   HE IN ALL LIKELIHOOD WON'T BE MOVED BETWEEN NOW AND

23   TOMORROW.

24        THE COURT:  ALL RIGHT.  DO YOU HAVE ANY OBJECTION TO

25   THAT, MR. RICO?

1          THE DEFENDANT:  NO, SIR.

2          THE COURT:  ALL RIGHT.  VERY WELL.

3          MS. SERANO:  I BELIEVE THERE WAS AN OSC BEFORE YOUR

4    HONOR CONCERNING A SUBPOENA ISSUED.

5          THE COURT:  YES.  I'M GOING TO TRAIL THAT JUST FOR A

6    MOMENT.  I'D LIKE FOR BOTH COUNSEL TO REMAIN IN THE

7    COURTROOM.

8          THAT'S ALL FOR YOU, SIR.

9          MR. BOLTAX:  YOUR HONOR, CAN I STEP OUTSIDE TO TALK

10   TO THE CLIENT'S FAMILY?

11         THE COURT:  YES.  I'M GOING TO HANDLE ONE MATTER,

12   I'M GOING TO TRAIL ONE MATTER AND THEN WE'LL COME BACK.

13   OKAY.

14         (PROCEEDINGS CONCLUDED AT 9:39 A.M.)

15                        --oOo--

16            C E R T I F I C A T I O N

17         I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
     QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
18   STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND
     CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN THE
19   AFOREMENTIONED CAUSE; THAT SAID TRANSCRIPT IS A TRUE AND
     CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE
20   FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS
     OF THE UNITED STATES JUDICIAL CONFERENCE.

21

22         DATED:  APRIL 12, 2014, AT SAN DIEGO, CALIFORNIA.

                              S/CAMERON P. KIRCHER
23                            CAMERON P. KIRCHER

24

25